**Lynn A. BARTH,
Respondent/Cross–Appellant,**

v.

**Peter M. BARTH,
Appellant/Cross–Respondent.**

**Nos. 56636, 56696.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 22, 1990.

Isidore I. Lamke, Washington, Michael S. Wright, Warrenton, for appellant/cross-respondent.

Richard K. Zerr, St. Charles, for respondent/cross-appellant.

HAMILTON, Presiding Judge.

On March 31, 1989, the Circuit Court of Warren County dissolved the marriage of Lynn Barth (hereinafter Wife) and Peter Barth (hereinafter Husband). Both parties appeal. We affirm.

Husband and Wife were married on December 17, 1977, in St. Louis, Missouri and separated on or about May 1, 1988. Two children were born of the marriage: Justin, born January 18, 1986, and Andrew, born April 16, 1988.

In the dissolution decree, the trial court granted primary custody of the children to Wife. It granted reasonable rights of visitation to Husband, including, but not limited to, alternate weekends, six consecutive weeks in the summer, and alternate holidays.

The trial court set aside the following property to Wife as her separate property:

| WIFE'S SEPARATE PROPERTY | VALUE | |
|---|---|---|
| 4 irrevocable trust accounts with Mercantile Bank | $1.5 million | |
| Commerce Bank Custodial Account | 1.5 million | (approx.) |
| Bearer Bonds | 80,000 | |
| IDS Discovery Account | 2,500 | |
| IDS Bond Fund Account | 3,400 | |
| IDS Management Retirement Fund Account | 5,700 | |
| IDS Flexible payment annuity | 15,000 | |
| Total Separate Property of Wife | $3,106,600 | |

It made the following disposition of the parties' marital property:

| | WIFE | HUSBAND |
|---|---|---|
| Marital Home | $160,000 reduced by a $69,000 payment to Husband | $69,000 |
| M & S Properties and M & S Restaurants, Inc. | | 40,000 |
| Interests in Balcor Realty, Bay Meadows, Greentree and Renaissance | | 95,000 * |
| IRA | | 4,000 |
| Bank Accounts | Not valued | |
| Items of Personal Property | approx. $49,000 | $ 82,000 |
| TOTALS | $140,000 | $290,000 |

* Although the trial court ruled that Husband was liable for any debts on these properties, the record fails to indicate the extent of the indebtedness.

---

Following dissolution, Wife possessed property valued at approximately $3,246,600. In its decree, the trial court made no designation of Husband's separate property.

On appeal, Husband asserts the trial court erred in 1) failing to allocate any of the appreciated value of the Commerce Bank Custodial account to Husband, even though Husband averred that the appreciation was partially due to the management of the account by him and 2) failing to consider the value of the property set apart to Wife and the economic circumstances of the parties when dividing their property.

In her cross-appeal, Wife contends the trial court erred in 1) dividing the property because most of it was acquired through Wife's separate funds, 2) failing to order Husband to be solely responsible for the payment of a promissory note made in connection with the acquisition of a limited partnership interest that was awarded to Husband, 3) failing to order that Husband's visitation with the children be supervised or limited, and 4) failing to order Husband to provide health insurance for the children.

■ Husband's first point on appeal concerns the stock account at Commerce Bank. Wife owned certain stocks prior to her marriage to Husband. She subsequently turned them over to Commerce Bank to manage. At the time of their marriage, the assets in this account were worth $450,000 according to Wife, and $750,000 according to Husband. At the time of the dissolution, the account was worth approximately $1,500,000. Husband contends that the trial court should have

designated the appreciated value of the account as marital property. He further asserts that he is entitled to a share of the appreciated value because that increase in value was partly due to his investment advice.

Section 452.330.2(5) V.A.M.S.Supp.1989 provides that the increase in value of property acquired prior to the marriage is separate property unless marital assets, including labor, have contributed to such increases. In such a case, the property is marital, but only to the extent of the contributions. *Id.* Enhancement in the value of a spouse's separate property that is caused by appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control is not jointly acquired property unless the non-owning spouse can prove that his contributions were also a causal factor. *Herr v. Herr*, 705 S.W.2d 619, 622 (Mo.App.1986).

Husband, in the instant case, testified that the assets in the custodial account did not increase in value between 1979 and 1983. In 1983, Wife entered into an advisory agreement with Commerce Bank for management of the stocks. At dissolution, the stocks were worth approximately $1.5 million. Husband testified that he gave Wife advice on the stocks, monitored the stocks, and attended and participated in meetings with Commerce Bank concerning the stock. Wife testified that the nature and number of shares of the stock were almost identical at the time of marriage and at the time she entered into the advisory agreement; that the increase in value of the stocks was not caused by her actions or those of Husband; that Husband put no efforts into the increased value of the stock; and that neither she nor Commerce Bank relied upon advice from Husband in managing the stocks. The trial court chose to believe Wife, as it was free to do under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court committed no error in awarding the entire value of the custodial account to Wife.

■ Husband next argues that the trial court erred in the division of marital property because it failed to consider the value of the separate property set apart to Wife.

Section 452.330.1 V.A.M.S.Supp.1989 directs the trial court to divide the marital property in such proportions as the court deems just after considering all relevant factors including the contribution of each spouse to the acquisition of the marital property, the value of the property set apart to each spouse, the economic circumstances of each spouse when the property division is effective and the conduct of the parties during the marriage.

Husband argues that the trial court should have considered the Wife's extensive separate property when dividing the marital property.

According to our calculation based upon the record before us, Husband received nearly 70% of the marital property. This division indicates the trial court, in allocating marital property, did consider the Wife's separate property. Husband's point is denied.

Wife also challenges the division of property. She first alleges the trial court erred in failing to set apart to her certain items of property that were acquired during the marriage in exchange for her separate property.

■ The first property Wife discusses is the marital home. The trial court found that the home was marital property, valued it at $160,000, awarded it to Wife, but ordered her to pay Husband $69,000 as his marital share of the property.

The parties purchased the home jointly, prior to the marriage. Wife contributed $25,000 towards the down payment. Husband contributed $5,000. The parties borrowed $40,000 for the remainder of the purchase price. During the marriage, they paid off the mortgage.

Wife contends that the trial court should have found that the marital home was her separate property because the house was acquired in exchange for Wife's separate property. § 452.330.2 V.A.M.S.Supp.1989. That section, however, only applies to "property acquired by *either* spouse." (Emphasis supplied). § 452.330.2 V.A.M.S.

Supp.1989. The parties bought the house together even though Wife supplied most of the funds. Moreover, in her financial statement, Wife listed the home as marital property. The trial court, thus, did not err in declaring the home marital property.

■ Wife next challenges the court's characterization of the 1988 Mark VII Lincoln automobile as marital property and the award of the car to Husband. Husband was leasing the car. In the parties' Property Exhibit, Husband (Respondent below) requested the car be awarded to him; Wife offered no objection. The trial court did not err in awarding the car to Husband.

■ Wife next asserts the trial court should have awarded two tractors to her as her separate property because these tractors were purchased with her separate funds during the marriage.

All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution is presumed to be marital property. Section 452.330.3 V.A.M.S.Supp.1989. The presumption of marital property is overcome only by clear and convincing evidence showing that the property was acquired in exchange for property acquired prior to the marriage, and that the transfer to the marital estate was not intended as a provision for settlement or gift to the other spouse. *Frerichs v. Frerichs*, 704 S.W.2d 258, 262 (Mo.App.1986); § 452.330.2(2) V.A.M.S. Supp.1989; *see also Conrad v. Bowers*, 533 S.W.2d 614, 622 (Mo.App.1975).

Wife has failed to prove that the tractors were not meant as a gift to the marital estate. Indeed, the parties' property exhibit indicates the tractors were marital property and that Husband had requested the property. Wife had not requested the property. Therefore, the trial court did not err in awarding the tractors to Husband.

■ Similarly, Wife complains she should have received the horses, Sweet Pea and Flash, because they were purchased with her separate funds. In the Property Exhibit, the parties classified Sweet Pea and Flash as marital property, and Husband requested them. The trial court did

not err in awarding these horses to Husband.

■ Wife next complains that the trial court awarded Husband interests in the M & S properties, M & S Restaurants, Inc., and four limited partnerships. In the Property Exhibit, these items were all characterized as marital. At trial, Wife asked the trial court to award all of these properties to Husband. On appeal, Husband asserts he no longer wants the properties. The trial court, however, committed no error in awarding the properties to Husband. Point denied.

■ Wife next contends that, even if the trial court is correct in what it considered to be marital property, the trial court still erred in the division of marital property.

A trial court in a dissolution case is required to make an equitable, not an equal, division of marital property. *Golleher v. Golleher*, 697 S.W.2d 547, 550–551 (Mo. App.1985). The trial court has broad discretion in determining the distribution of marital property. *Id.* at 550. As previously noted, Husband received approximately 70% of the marital property and Wife approximately 30%. In dividing the marital property, the trial court appears to have properly considered the distinct financial advantage Wife has over Husband. Section 452.330.1(1) and (3) V.A.M.S.Supp. 1989. Especially considering the dubious value of the partnerships awarded to Husband, the trial court did not err in its division. Wife's second point is denied.

■ Wife also complains that the trial court erred in failing clearly to order Husband to be "solely responsible" for the payment of a $38,000 promissory note to Commerce Bank made in conjunction with the acquisition of the four limited partnerships.

The trial court, awarding the four limited partnerships to Husband, ordered him to hold Wife harmless from any claims of indebtedness against said properties or subsequent capital or investment contributions required by the partnerships. It made no specific finding as to whether the

$38,000 promissory note was a claim of indebtedness against the partnerships.

Debts incurred by the parties during their marriage are not marital property, and the trial court is under no obligation to distribute marital debts. *Harper v. Harper*, 764 S.W.2d 480, 483 (Mo.App.1989). Marital debts, however, are factors to be considered in establishing a fair division of marital property. *Id.*

At trial, Wife testified that she and Husband had borrowed $38,000 from Commerce Bank to finance in part their purchase of the four limited partnerships: Balcor Investments, Bay Meadows, Greentree and Renaissance. In her Financial Statement, Wife indicated that both she and Husband had signed the promissory note. In his brief, Husband admits that the $38,000 debt was incurred with regard to the purchase of the limited partnerships. The trial court's order specifies that Husband is to hold Wife harmless for this debt. Wife in her brief, however, seeks to have this Court to order Husband to be "solely responsible" for the $38,000 loan.

A trial court has the authority to distribute marital debts in the sense that one party may be assigned the primary duty to pay a debt and to hold the other harmless thereon. *Alvino v. Alvino*, 659 S.W.2d 266, 272 (Mo.App.1983). This is precisely what the trial court ordered in the instant case. To make Husband solely responsible to Commerce Bank required removal of Wife's name from the promissory note. Because the record before us reflects neither that Commerce Bank agreed to deletion of Wife's name from the note nor that Commerce Bank was a party to this proceeding, the trial court had no authority to award such relief. Wife's point is denied.

■ Wife next asserts that the trial court erred in characterizing a twin bed, chest, and dresser as marital property and in awarding them to Husband.

The trial court valued this furniture as $875 and gave it to Husband. In their Property Exhibit, the parties indicated that this furniture was marital property. At trial, however, Wife testified that the chest, dresser, and twin bed were her separate property because her great-aunt had given them to her.

The trial court did not err in declaring the property marital. The Property Exhibit constituted substantial evidence that the furniture was marital property. Wife's point is denied.

■ Wife next contends that the trial court erred in failing to order that Husband's temporary custody and visitation with the minor children be supervised or limited. The trial court provided that Husband have "reasonable rights of visitation" with the children. His temporary custody was to include overnight visits.

A parent not granted custody of his child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development. § 452.400.1 V.A.M.S.Supp.1989. At trial, Herb Kriete, a friend of Husband, testified that on one occasion he observed Husband hand a container of beer to Justin, the parties' two-year-old son. He also testified that during one of Husband's Wednesday night visitations, he observed Husband asleep for a period of 45 minutes while the infant Andrew crawled around unattended on the floor. Wife, however, testified that she did not believe Husband was a bad father or that he would hurt the children. She was merely opposed to overnight visitation because she felt the children were too young. Wife therefore failed to establish that reasonable visitation with Husband would endanger Justin or Andrew's physical health or emotional development. Wife's point is denied.

■ In her final point, Wife alleges the trial court erred in failing to order Husband to provide health insurance coverage for Justin and Andrew. A trial court may require a non-custodial parent to provide medical insurance for his children. § 452.353 V.A.M.S.Supp.1989. In the instant case, however, Husband is unemployed and Wife has far greater financial resources than Husband. As such, the trial court did not err in refusing to require

Husband to provide insurance for the children.

Judgment affirmed.

STEPHAN and SIMEONE, JJ., concur.