Harry Albert VAN SKIKE, Respondent,

v.

Hazel Laverne VAN SKIKE, Appellant.

No. WD 46695.

Missouri Court of Appeals,
Western District.

July 13, 1993.

Rehearing Denied Aug. 31, 1993.

Peter James Koppe, Kansas City, for appellant.

John E. Chick, Jr., Kansas City, for respondent.

Before FENNER, P.J., and SPINDEN and SMART, JJ.

FENNER, Presiding Judge.

Appellant, Hazel Laverne Van Skike, appeals the judgment of the trial court in the dissolution of her marriage from respondent, Harry Albert Van Skike.

At the time of their dissolution, Hazel was 58 years of age and Harry was 54 years of age. The parties were married on January 1, 1983 and lived together for approximately nine years before separating on November 4, 1991. At the time of their dissolution, Harry was employed by National Starch earning $680.34 per week, while Hazel was not employed outside the home. There were no children from the marriage of the parties.

This being a court tried case, the judgment of the trial court should be affirmed on appeal unless there is no substantial evidence to support the decision, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In her first point on appeal, Hazel argues that the trial court erred by denying her claim for maintenance.

Section 452.335.1, RSMo Supp.1992,[1] sets forth the two part threshold test for any award of maintenance. The court should first consider whether the party requesting maintenance has sufficient property, including marital property divided during the dissolution proceedings, to provide for his or her reasonable needs. *Whitworth v. Whitworth*, 806 S.W.2d 145, 148 (Mo.App.1991). If the party requesting maintenance has insufficient property to meet his or her needs, the court then examines whether the party's reasonable needs can be met through appropriate employment. *Id.*

In the event an award of maintenance is warranted, section 452.335.2 provides that maintenance should be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including the marital property apportioned to him, and his ability to meet his needs independently . . . ;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

Section 452.335 gives the trial court wide discretion in determining if spousal maintenance is appropriate. *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 800 (Mo. banc 1983). The trial court must determine what, if any, maintenance should be awarded after giving due consideration to the factors listed in section 452.335.2. *Id.* However, justice does not require provision of support to a spouse who is or may be prepared to become self-supporting. *Id.* If a trial court determines that the spouse seeking maintenance is capable of self-support, a denial of maintenance is not error. *McDonough v. McDonough*, 762 S.W.2d 827, 830 (Mo.App.1988).

The trial court has broad discretion in determining the amount and duration of maintenance to award in a dissolution action. *May v. May*, 801 S.W.2d 728, 731 (Mo.App.1990). Review on appeal is limited to a determination of whether the trial court has abused its discretion. *Id.*

In the case at bar, neither of the parties had significant property after the dissolution. The record clearly does not establish that Hazel has sufficient property to meet her reasonable needs. We, therefore, must determine if the record supports the determination that Hazel has the ability to meet her reasonable needs through appropriate employment.

Hazel was 58 years old with only an eighth grade education. She had limited writing and spelling abilities. The only type of work that Hazel had done was factory work and babysitting. Hazel last held a factory job in 1984. Hazel's health had been poor since the beginning of the marriage. Hazel had experienced heart

---

**1.** All statutory references are to RSMo Supp. 1992.

problems, cancer, and she had difficulty breathing. Her breathing difficulties had become progressively worse throughout the course of the marriage.

The record does not reflect that Hazel has the ability to meet her reasonable needs through appropriate employment. At best, the record reflects that Hazel would be limited to minimal paying positions.

We believe that the determination of the trial court that Hazel was not entitled to maintenance was against the weight of the evidence.[2] Therefore, we consider the factors set forth under section 452.335.2 in determining the maintenance to which Hazel is entitled.

In considering the factors set forth under section 452.335.2, the record reflects that the parties had a modest standard of living during the marriage, but they were able to meet their needs and provide assistance to the families of both Hazel and Harry. Furthermore, taken in the light most favorable to the trial court's judgment, Hazel had been guilty of marital misconduct by having sexual relations with another man in the family home. Hazel also had a drinking problem and she was not a good housekeeper. Nonetheless, by his own admission, Harry's conduct was not exemplar, although in the light most favorable to him, it did not rise to the level of Hazel's misconduct.

There was evidence to show that Hazel had applied for and was denied social security disability benefits. The evidence established that a person is not entitled to social security disability benefits unless they meet both an earnings requirement and a disability requirement under the law. The Social Security Administration at one point notified Hazel that she was denied disability benefits because she did not meet the earnings requirement. In another notice from the Social Security Administration, Hazel was advised that her difficulty with breathing was not severe enough through the time that she was last insured

for disability benefits, June 30, 1990, to prohibit her from working.

There was also evidence to show that at age 62, Hazel would be entitled to receive social security benefits as a result of a previous marriage. However, there was no evidence to establish the amount of such benefits. Additionally, there was evidence presented to show that Harry was entitled to a pension benefit through his employer. The present value of Harry's lump sum pension benefit was approximately $19,000. Hazel was awarded a prorated share of Harry's pension. The fraction of Harry's pension that Hazel was granted was determined by using the number of months of the marriage (114) as a numerator and the number of months of Harry's employment at the time of his retirement as the denominator. Harry's employer was required to pay Hazel one-half (½) of such fractional amount of Harry's lump sum or monthly pension.

Even in the light most favorable to Harry, the record reflects by Harry's own admission that Hazel was in poor health and had some difficulty with breathing at least periodically. Hazel had limited job prospects because of her age, experience, limited education, and physical condition. Furthermore, Hazel had no resources with which to support herself after nine years of marriage to Harry. Hazel did have the prospect of social security benefits in the future and minimal benefit from Harry's pension at the time of his retirement. However, these prospects were uncertain as to amount and/or point of entitlement.

It was against the weight of the evidence and an abuse of discretion for the trial court to deny Hazel maintenance. We find that Hazel is entitled to maintenance in the amount of $300 per month. On remand the trial court is directed to award Hazel maintenance accordingly from the date this opinion is handed down forward.

In her second point, Hazel complains of the trial court's property division. Hazel complains that the trial court awarded the

---

**2.** Under Rule 84.14, unless justice otherwise requires, an appellate court shall dispose finally of a case and render the judgment that the trial court should have rendered. *Campbell v. Campbell*, 825 S.W.2d 319, 322 (Mo.App.1992).

1985 Mercury to both of the parties, awarded her a Greyhound bus that did not exist, $900 worth of concrete that had already been used on Harry's non-marital real estate, and failed to divide an outboard motor.

The testimony was that the parties had a Mercury automobile and a Ford automobile. Harry testified that the parties had agreed that he was to take the Ford and Hazel the Mercury. In its judgment, the court awarded the Mercury to both parties in separate portions of the judgment. The court made no award of the Ford. It appears this matter could have been addressed in a nunc pro tunc order, but since it is before us and this matter is remanded because of maintenance, the trial court is directed to modify its judgment to award the Ford to Harry and the Mercury to Hazel. The trial court is further directed to make an award of the outboard motor based on the evidence already heard.[3]

In regard to the concrete awarded to Hazel, the record reflects that it has been used on real estate awarded to Harry. On remand the court is to modify its judgment eliminating the concrete as a separate item of property. Finally, since the court found the Greyhound bus to be of no value, neither of the parties was prejudiced by its disposition.

The judgment of the trial court is reversed in regard to maintenance, the distribution of the automobiles, concrete and lack of distribution of the outboard motor. This cause is remanded with directions for the trial court to award Hazel maintenance in the amount of $300 per month beginning on the date or within 30 days of the date this opinion is handed down forward, to award Harry the Ford and Hazel the Mercury, to make distribution of the outboard motor, and to eliminate the concrete as a separate item of property. In all other respects, the judgment of the trial court is affirmed.

All concur.

---

**3.** *Generally, the remedy for failure to divide some property is a separate suit in equity to determine ownership of the omitted property. Golleher v. Golleher, 697 S.W.2d 547, 549 (Mo. App.1985). However, under the circumstances* here, since this cause is remanded on other grounds, we direct that the court make a division of the outboard motor and automobile in question.